IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

MANAGEMENT ADVISORY
SERVICES, INC.,

    Plaintiff,

      v.

                                CIVIL ACTION FILE
                                NO. 4:21-CV-47-TWT

THEODORE B. BRENNAN, et al.,

    Defendants.

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Plaintiff

Management Advisory Services, Inc.'s Motion for Summary Judgment [Doc.

32]. For the reasons set forth below, the Plaintiff's Motion for Summary

Judgment [Doc. 32] is GRANTED.

### I.    Background[1]

This action arose from the alleged non-payment of a promissory note

executed by Defendant Engineered Attachments, LLC and guaranteed by

Defendant Theodore B. Brennan, obligating the Defendants to pay the Plaintiff

$150,000.00 under the terms of the note. (Compl. ¶¶ 7-10). The Plaintiff

Management Advisory Services, Inc. is owned by Terrell Sovey, who is not a

---

[1] The operative facts on the Motion for Summary Judgment are taken
from the parties' Statements of Undisputed Material Facts and the responses
thereto. The Court will deem the parties' factual assertions, where supported
by evidentiary citations, admitted unless the respondent makes a proper
objection under Local Rule 56.1(B).

party to this action. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 1). Sovey's daughter was married to Defendant Brennan from 2002 until 2020. (*Id.* ¶ 3). Over the years that Brennan was married to Sovey's daughter, Sovey advised Brennan on Brennan's businesses. (Defs.' Statement of Add'l Undisputed Material Facts ¶ 14). During the divorce proceedings, Brennan produced monthly financial statements on his businesses and spoke to Sovey about the financial status of the businesses. (*Id.* ¶ 49). In 2001, an associate of Sovey's, Mike Miller, started a company known as North American Attachments, LLC, with Sovey personally owning five percent of the company. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 5-6). Prior to the divorce, when Brennan expressed interest to Sovey about acquiring another business, Sovey suggested that he acquire North American Attachments. (*Id.* ¶¶ 14-15).

Sovey invited Brennan and Miller to his vacation home to discuss Brennan's acquisition, through Defendant Engineered Attachments, of North American Attachments. (*Id.* ¶¶ 18-19). Miller and Brennan discussed the transaction at depth, while Sovey did not "have a lot of discussion" with them. (*Id.* ¶¶ 20-21). Brennan then purchased North American Attachments' assets through Engineered Attachments for an agreed-upon price of $500,000, which was reflected in a Purchase Agreement. (*Id.* ¶¶ 22, 25, 27-28). The Purchase Agreement set forth a payment schedule for Engineered Attachments to pay the $500,000 purchase price to North American Attachments, requiring the

2

following payments: (1) $200,000 to be paid via certified check at closing; (2) $150,000 to be paid in cash on January 5, 2019; and (3) $75,000 to be paid in cash in both 2019 and 2020, through quarterly installments. (*Id.* ¶ 29). Separately, Miller signed a two-year employment agreement to be Engineered Attachments' sales manager. (*Id.* ¶ 30).

Prior to this transaction, the Plaintiff Management Advisory Services had made "three or four loans" to Brennan's other companies. (*Id.* ¶ 40). When the first $200,000 closing payment came due, Brennan requested a $200,000 loan from the Plaintiff to tide him over until he received other financing. (*Id.* ¶ 45). Brennan repaid the loan once the financing came through. (*Id.* ¶ 47). When the second $150,000 payment came due on January 5, 2019, Brennan requested a loan in that amount from the Plaintiff, through Engineered Attachments. (*Id.* ¶ 48). The Plaintiff agreed to make the loan and Brennan drafted a Promissory Note by editing a note that he had used for a prior loan from the Plaintiff. (*Id.* ¶ 50).

Brennan then executed the Promissory Note on behalf of Engineered Attachments, and also on his own behalf as guarantor. (*Id.* ¶ 51). In the guaranty Brennan signed, Brennan "unconditionally guarantee[d] all the obligations of [Engineered Attachments] under" the Promissory Note. (*Id.* ¶ 55; Pl.'s Mot. for Summ. J., Ex. D at 2). The terms of the Promissory Note required interest only payments at 6.25% for the first 13 months, and then monthly payments of interest and principal thereafter. (Pl.'s Statement of Undisputed

Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 54; Pl.'s Mot. for Summ. J., Ex. D at 1). Once the Plaintiff disbursed the $150,000 loan, Engineered Attachments made the interest payments for the first 13 months, but only made partial payments towards principal and interest thereafter. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 56). According to the Defendants' own records, the last payment made was in November 2020 and, as of November 2021, the Defendants owed $153,500.04 on the loan in principal and interest. (*Id.* ¶ 57; Pl.'s Mot. for Summ. J., Ex. E). The Defendants do not dispute the Plaintiff's calculation of the debt owed under the Promissory Note but contend that they are not obligated to repay the debt. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 112).

Relevant to the Defendants' defenses for non-payment is Miller's May 1, 2019 visit with Sovey, during which Sovey informed Miller that Sovey's daughter and Brennan were divorcing. (*Id.* ¶¶ 60, 66-67). When Miller returned from this visit to Engineered Attachments' office, he spoke with employee Angel Gallimore, who contends that Miller asked her to provide him with financial information about Engineered Attachments. (*Id.* ¶¶ 73-74). Gallimore refused, but informed Brennan about Miller's meeting with Sovey as well as Miller's request. (*Id.* ¶¶ 75-76). Brennan fired Miller from Engineered Attachments on May 30, 2019. (*Id.* ¶ 78, 80).

In its Complaint, the Plaintiff asserts two claims against the Defendants arising out of the non-payment of the Promissory Note: breach of promissory note and guaranty (Count I) and for attorney's fees and costs (Count II).[2] (Compl. ¶¶ 11-18). In their answers, the Defendants filed a counterclaim for breach of fiduciary duty (Count I). (Def. Brennan's Answer ¶¶ 39-46; Def. Engineered Attachments' Answer ¶¶ 39-46). The Defendants also requested attorney's fees and costs. (Def. Brennan's Answer ¶ 46; Def. Engineered Attachments' Answer ¶ 46). The Court denied the Plaintiff's Motion to Dismiss the Defendants' Counterclaims in May 2021, and the Plaintiff filed the present Motion for Summary Judgment as to its breach of promissory note and breach of guaranty claim and as to the Defendants' counterclaims in December 2021.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue

---

[2] The Plaintiff did not move for summary judgment as to its claim for attorney's fees and costs. (See generally Pls. Mot. for Summ. J. and Pls. Brief in Supp. of Pls. Mot. for Summ. J.).

T:\ORDERS\21\Management Advisory Services, Inc\msjtwt.docx

of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The

burden then shifts to the nonmovant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact

exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

> Under Georgia law,
>
> [a] creditor in possession of a valid and signed promissory note
> has a prima facie right to repayment, unless the debtor can
> establish a valid defense. A debtor cannot defeat this prima facie
> right of repayment by denying the debt for general reasons; it
> must assert a valid affirmative defense, such as estoppel or
> illegality.

*City of Bremen v. Regions Bank*, 274 Ga. 733, 739 (2002); *see also* O.C.G.A.

§ 11-3-308; *Wooden v. Synovus Bank*, 323 Ga. App. 794, 796 (2013). Similarly,

"a plaintiff who produces an executed guaranty agreement is entitled to

judgment as a matter of law on a claim against the guarantor for liability under

the guaranty, unless the guarantor establishes a defense." *ND Props. v. BLRG*

*Restaurant Group, Inc.*, 649 F. App'x 861, 864-65 (11th Cir. 2016). As to

guarantors, Georgia law provides that "[a]ny act of the creditor . . . [that]

increases the [guarantor's] risk or exposes him to greater liability shall

discharge him." O.C.G.A. § 10-7-22. The Georgia Court of Appeals has applied

this "increase the risk" language in terms of increasing the guarantor's risk

under the guaranty. *Wooden*, 323 Ga. App. at 796. Where guaranty language

is unambiguous, courts "cannot look to extrinsic evidence to vary . . the terms

of [a] guaranty." *Id.*

T:\ORDERS\21\Management Advisory Services, Inc\msjtwt.docx

In a recent decision, the Georgia Court of Appeals held that the relationship between a borrower and lender typically does not give rise to a fiduciary duty. *Rubenstein v. Palatchi*, 359 Ga. App. 139, 143 (2021). Further, a fiduciary duty also does not arise based on "the mere fact that two persons have transacted business in the past and . . . have come to repose trust and confidence in each other as the result of such dealings[.]" *Id.* (quotation marks omitted). Nor does a close family-friendship confer a fiduciary duty. *Id.* at 143-44 (noting that no confidential relationship exists between close friends as to a business transaction where each party seeks to advance his own separate objective). "And the party asserting the existence of a fiduciary or confidential relationship bears the burden of establishing its existence." *Duncan v. Rawls*, 359 Ga. App. 715, 722 (2021) (quotation marks omitted).

### III.   Discussion

The Plaintiff moves for summary judgment both as to its own claims and as to the Defendants' counterclaims. (Pls. Mot. for Summ. J. at 1-2). The Court will address the Plaintiff's claims before turning to the Defendants' counterclaims. For the reasons set forth below, the Court finds that the Plaintiff is entitled to summary judgment on its claims as well as on the Defendants' counterclaims.

### A. The Plaintiff's Claims

The Plaintiff's claims are for breach of the Promissory Note as to Engineered Attachments and for breach of guaranty as to Brennan. (Compl.

¶ 12-14). As to the first claim, there is no question—nor have the Defendants disputed—that the Promissory Note was validly executed by Engineered Attachments through Brennan. *See City of Bremen*, 274 Ga. at 445-46. Similarly, as to the second claim, Brennan signed an unconditional guaranty of the Promissory Note, which he drafted himself, and the Plaintiff is thus entitled to judgment as a matter of law on the breach of guaranty claim unless Brennan establishes an affirmative defense. *See ND Props.*, 649 F. App'x at 864-65.

While unclear, it appears that the Defendants are asserting as defenses that the Plaintiff breached a fiduciary duty as to the Promissory Note claim and "increased risk" to Brennan as guarantor due to breach of fiduciary duty as to the guaranty claim. Neither defense is availing. First, contrary to the Defendants' contentions otherwise, Georgia law is clear that once a prima facie case for breach of a promissory note is established, the burden shifts to the Defendants to prove an *affirmative* defense. *See City of Bremen*, 274 Ga. at 445-46. Second, breach of fiduciary duty is a standalone claim in Georgia rather than an affirmative defense, and the Defendants have pointed to no authority discharging a signatory from a Promissory Note based on breach of fiduciary duty. Nor has the Court's own research produced any such authority. Additionally, Engineered Attachments cannot assert the increased risk defense because it was a signatory to the Promissory Note, not a guarantor. *See* O.C.G.A § 10-7-22. Thus, there is no genuine issue of material fact as to

8

Plaintiff's entitlement to recover on the Promissory Note as to Defendant Engineered Attachments.

Defendant Brennan's increased risk defense to the breach of guaranty claim is slightly more nuanced, but still legally insufficient. The language of the guaranty Brennan signed states that he "unconditionally guarantee[d] all the obligations of the Borrower under [the Promissory Note]." (Pls. Mot. for Summ. J., Ex. D at 2). The Court is obliged to find that the unambiguous term "unconditionally" means here exactly what it would mean anywhere else—that Brennan guaranteed Engineered Attachments' obligations without conditions. *See Wooden*, 323 Ga. App. at 796 (noting that where guaranty language is unambiguous, Courts cannot rely on extrinsic evidence to vary the terms of the guaranty); *see also unconditional*, Black's Law Dictionary (11th ed. 2019) ("[n]ot limited by a condition; not depending on an uncertain event or contingency; absolute"). Here, Brennan is essentially asking the Court to consider extrinsic evidence of his familial and business relationship with Sovey—the Plaintiff's owner and managing partner—to find a condition in that guaranty that Brennan would guarantee Engineered Attachments' obligation on the Promissory Note so long as Sovey did not increase his risk under the guaranty. But the law does not allow the Court to do so.

Nor would the undisputed facts support an increased risk defense. Specifically, under Georgia law, the increased risk defense requires an increase in the guarantor's risk *under the guaranty*. *See Wooden*, 323 Ga. App. at 796.

9

But Brennan has not explained how the Plaintiff's alleged breach of fiduciary duty to Engineered Attachments or to him caused him to suffer an increased risk that Engineered Attachments would not meet its obligations under the Promissory Note, making him more liable as guarantor. The only argument Brennan makes that comes close is his argument that he terminated Miller due to Sovey and Miller's meeting and Sovey's disclosure of Brennan's divorce, resulting in reduced sales for Engineered Attachments. Thus, Brennan essentially concedes that the only action that may have increased Engineered Attachments' risk of defaulting on the Promissory Note, and therefore increased Brennan's risk under the guaranty, was an action Brennan himself took. For these reasons, Defendant Brennan's defenses to the breach of guaranty claim are without merit, and there is no genuine issue of material fact that Plaintiff is entitled to summary judgment on this claim.

### B. The Defendants' Counterclaims

The Defendants counterclaimed for breach of fiduciary duty as to the Plaintiff and for attorney's fees and costs under O.C.G.A. § 13-6-11. (Def. Brennan's Answer ¶¶ 39-46; Def. Engineered Attachments' Answer ¶¶ 39-46). The Defendants attempt to draw a blurry line connecting the actions of Sovey, who is not a party to this action, with Plaintiff Management Advisory Services. The Defendants point only to Brennan's long familial and business relationship with Sovey, including prior loans requested from Sovey and funded by the Plaintiff, but do not point to any actions of the Plaintiff itself to

10

comprise their breach argument. And the undisputed facts make clear that Plaintiff Management Advisory Services' sole relationship to Brennan and Engineered Attachments was as a lender. But under Georgia law, a lender-borrower relationship does not confer a fiduciary duty. *See Rubenstein*, 359 Ga. App. at 143. Nor does Brennan's close familial and friend relationship with non-party Sovey. *See id.* at 143-44. As counterclaimants, it was the Defendants' burden to establish the existence of a fiduciary relationship, and for these reasons, they have failed to do so. *See Duncan*, 359 Ga. App. at 722. On that basis, the Court concludes that there is no genuine issue of material fact that the Plaintiff did not owe a fiduciary duty to the Defendants, and therefore did not breach any duty. Finally, because summary judgment is warranted in the Plaintiff's favor as to its breach of promissory note and breach of guaranty claims, as well as on the Defendants breach of fiduciary duty counterclaim, the Defendants are not entitled to attorney's fees and costs under O.C.G.A. § 13-6-11.

## IV.    Conclusion

For the reasons set for above, the Plaintiff's Motion for Summary Judgment [Doc. 32] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Plaintiff and against the Defendants jointly and severally as to Count I in the amount of $148,031.25, plus post-judgment interest.[3]

---

[3] This is the amount requested by the Plaintiff in its complaint, and the Defendants have not challenged it. (Compl. at 6).

T:\ORDERS\21\Management Advisory Services, Inc\msjtwt.docx

SO ORDERED, this    26th    day of July, 2022.

THOMAS W. THRASH, JR.
United States District Judge